1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF PUERTO RICO

3

4

5

6  UNITED STATES OF AMERICA  /

7  VS.                      /  CR. 13-888 (ADC)

8  CARLOS CARRERO RAMOS      /

9  _____/

10

11

12

13              SENTENCING HEARING

14  Was held before the HONORABLE AIDA M. DELGADO COLON on

15  Friday, August 21, 2015.

16

17

18

19  FOR THE GOVERNMENT:

20  JOHN MATHEWS, AUSA

21

22  FOR THE DEFENDANT:

23  LARA CASTRO WARD, ESQ.

24

25

1          THE CLERK:   13- 888 United States of America

2    versus Carlos Carrero Ramos.   Appearing on behalf of the

3    government John Mathews, and for the defendant, Lara

4    Castro.   The defendant is present and being assisted by

5    the court interpreter.   Case called for sentencing.

6          THE COURT: I have the plea agreement at Docket

7    599.   I have Docket 874 a Sentencing Memorandum by the

8    defense which is noted.   And the Motion to Restrict that

9    is granted.   And I have the addendum to the presentence

10   report at Docket 844 which points out that originally

11   there were objections that were made to the Probation

12   Officer.   Some of those mentioned objections were

13   considered by the Probation Officer and others remain

14   there.   Actually I have here the presentence report at

15   Docket 843 and I have a motion entitled Objections to

16   the Presentence Report filed at Docket 842 that I would

17   like to commence by discussing those.

18          First of all attorney Castro, I take it that you

19   discussed the presentence reports with your client.

20          MS. CASTRO:   Yes, I did, Your Honor.

21          THE COURT: In terms of the objections we have at

22   Docket 842.   You are basically objecting to the role of

23   this defendant in the indictment as he was only

24   described as a seller, leader and drug processor within

25   the conspiracy within the indictment, and what you are

1    objecting to is the description of the role as an

2    enforcer by the Probation Officer.  Is that correct?

3           MS. CASTRO:  That is correct, Your Honor.  I

4    would like to emphasize though that I just spoke to the

5    Probation Officer and although there was no other

6    language of his description in the other roles, I did

7    realize when I spoke to her that within the paragraph

8    where he is mentioned, all those roles at the end of the

9    paragraph were included.  So in fact what she did was,

10   that although he was not named in each one of the roles

11   individually, what she did was that she used that last

12   sentence to describe what his roles were.

13          THE COURT: What you are saying is that what the

14   Probation Officer did was to transpire the last sentence

15   within the indictment into the presentence report.

16          MS. CASTRO:  That is correct, Your Honor.  So at

17   this time we will not focus on that objection and we

18   would just like to continue with the allocution.

19          THE COURT: Okay.  I take it that you are

20   withdrawing that one.

21          MS. CASTRO:  Yes, Your Honor.

22          THE COURT: So.  Do you have any other objections?

23          MS. CASTRO:  No, we agree with the calculations

24   and have no other objections.

25          THE COURT: I will hear from you then.

1          MS. CASTRO:  Your Honor, I would like to focus

2    on all of the good characteristics of Mr. Carrero.  He

3    is a young man, 29 years old, never been arrested

4    before.  He is a first time offender, Your Honor.  He

5    actually had a good career.  He had a barber shop within

6    his residence, he is a lifelong resident of Anasco,

7    Francisco Public Housing project is where his family all

8    resides as you can see in the last row all of them are

9    there.  He has so much support from his family.  A lot

10   of love from his wife who he has been with in a marriage

11   for 13 years, Your Honor.  They have been together in a

12   stable relationship.  He cares for her.  She is a

13   patient of many medical conditions.  She has

14   hypertension, ulcers, diabetes, and he is the one that

15   cares for her.  He takes her to all the doctor

16   appointments, cleans her ulcers.  I personally spoke to

17   her and the love and support that he gives her is

18   unconditional.

19          Your Honor, as a father he has been excellent not

20   only to the three children that she had from another

21   relationship.  He has been a father to all three of

22   those but also he appropriated a fourth child with her ,

23   Your Honor, so in essence he is the father of four

24   children.  As a barber who had a barbershop in the

25   residence, he would provide economically for his family.

He never demonstrated in any way that there was any great benefit from the small or short time that he sold drugs.  In fact he owns a 1982 Corolla, his house, and I have included pictures within the private investigators report, is extremely low income.  There was never any great economic benefit from the time that he sold drugs. But all the good characteristics that he has, they really demonstrate that for most of his life he made so many right choices, Your Honor.

Although he didn't finish high school, because what he did was that he moved in with his wife and began to provide for her, he has a great desire to finish his GED and in fact while he has been in prison he has had excellent conduct.  He has been working 200 hours a week in the food service department.  All of the characteristics described in the report by the BOP is that he is excellent, responsible and hard working. These were the characteristics that he also demonstrated throughout his life when he was living in Anasco.  He was a barber that would wake up early from 8:00 a.m. to 11 p.m..  He had all sorts of a people around Anasco that would come to his barbershop that he would cut their hair, for judges, for people that were professionals, Your Honor.

He was very good with children, he was a baseball

1  coach.

2      THE COURT: I am sorry to interrupt you, he said

3  that he works 200 hours per week?

4      MS. CASTRO:  I'm sorry, that must have been a

5  month.  That is my mistake then.  But what I  want to

6  let you know is that he has been using his time wisely.

7  He is a person that has continued to take courses,  Your

8  Honor. He took a nutrition in sport course, how to

9  maintain your health while he has been in the BOP.

10      As I was saying in his own community he was

11  working with the community as a baseball coach.  He

12  would work with kids because he was an avid baseball

13  player through all of his life. He won trophies and

14  would compete in different baseball games, Your Honor.

15  I believe I included that in one of my reports a picture

16  of his trophies.

17      Your Honor, this is a humble hard working man

18  that for one year out of his own admission he began to

19  sell drugs.  It was always my argument that it was more

20  then 1,000 feet from the Anasco area, because where he

21  sold from was his residence, or around the residence.

22  The way that he was in any way in contact with the

23  leaders within the public housing, was because he knew

24  them his whole life, because they all grew up together

25  in the same public housing.

1          THE COURT: I imagine that he got his supply from

2     somewhere, either delivered or going to the drug point

3     to get it.

4          MS. CASTRO:  I believe those were the connections

5     that he had within the public housing project drug

6     point.  But the reality was that he has denied being

7     involved in any violent activities.  He also denies in

8     any way possessing a firearm or participating in the

9     violent acts that any of the other leaders allegedly

10    participated in.

11          So what he did accept to me was that the year

12    that he decided to sell drugs he also become a cocaine

13    user.  He became addicted to the drug.  In many ways

14    this clouded his judgment from being somebody that had

15    always been hard working, in a stable relationship,

16    working with the children in the community, definitely

17    his addiction affected his values and morals and he

18    began to sell drugs on the side, to help I suppose with

19    the money situation in the home, because there was not a

20    lot of money anyway, Your Honor. But he expressed

21    extreme remorse to me, because the most important thing

22    for him was, the most important thing is his family.  He

23    spoke to me about how much he misses his children, how

24    much he misses his father and his wife, and all he wants

25    to do is return home to be with them.

1          This is a person, Your Honor, you just spoke

2     before about Carlos Amaury, and about the rehabilitation

3     is so important.  This is somebody who has a great

4     chance of being rehabilitated.  Why?  Because before

5     this indictment he never been arrested or involved in

6     any type of criminal activity.  Because he has a skill

7     of being a barber.  He will be able to come out on the

8     street and work and make a legitimate income.  Because

9     he has family support he will have somebody that will

10    give him all of the tools that he needs to reintegrate

11    into society and be successful.  Because he is

12    repentant. How has demonstrated that, Your Honor, for

13    his outstanding conduct within the BOP.  He has never

14    had a chat, never been as we say in the hole or has been

15    found with any type of contraband.  Quite the contrary,

16    he has exemplary in his attitude, his actions and his

17    role working in the food service department.  In the

18    description from his counselor and the neighbors and

19    letters that I received from the community, all describe

20    him in the same manner, as a hard working man who is

21    responsible and very family oriented.

22         So, I believe this is the person that the law is

23    speaking about trying to release beforehand when we look

24    at the 782 amendment of reducing the time for first time

25    offenders or non-violent offenders, he is absolutely one

1   of these people that will come out into the society be

2   successful and learn from this mistake, Your Honor.

3          So, I want to plead with you that same mercy that

4   you have had with Amaury that you consider my client as

5   also a perfect candidate to get the minimum mandatory

6   sentence, Your Honor. That you evaluate all of the

7   positive characteristics that he has and consider that

8   within this indictment, besides cooperators that may

9   have said one thing or the other, the only real evidence

10  that linked him was a sale that he did of 2.4 grams of

11  cocaine, which was done to an undercover agent outside

12  of the public housing.  It was always our arguments with

13  the government that perhaps his participation had been

14  in some way exaggerated, because of his own admissions

15  to me.

16         THE COURT: Counsel, you are walking a thin line

17  with a couple of things that you are denying here that

18  do not go along with the plea agreement.  One is

19  argument and the other thing is caution not to cross the

20  line.

21         MS. CASTRO:  All I want you to know is that my

22  client is extremely remorseful for his participation in

23  the indictment and we are requesting the lower end of

24  the guidelines.  That you please consider the reasons

25  why he got involved and the short period of time that

1    his participation was, and all of the characteristics

2    that identify him as the perfect person for

3    rehabilitation.

4            THE COURT: Very well, thank you.  Mr. Carrero do

5    you remember having discussed the presentence report

6    with your attorney?

7            THE DEFENDANT:  Yes.

8            THE COURT: Do you  understand that the

9    information within that report is correct?

10           THE DEFENDANT:  Yes.

11           THE COURT: Right now, is there anything else that

12   you would like to state and that you would like to point

13   out and that I should know before deciding what your

14   sentence will be?

15           THE DEFENDANT:  First of all good afternoon to

16   everyone.  I would like to apologize to the Court, I

17   would like to know if I can address my family so that I

18   can speak to them?

19           THE COURT: Can you do so.

20           THE DEFENDANT:  To my family here.  You are the

21   best parents in the world.  The path that I took in life

22   is not the path that you taught me.  I ask for their

23   forgiveness for making them suffer.  I love all of you

24   and soon in the name of God we will all be together.

25   That will be all.  And thank you very much for allowing

1    me to speak my mind.

2          THE COURT: I will hear from the government.

3          AUSA MATHEWS:  The government also stands by the

4    plea agreement.  The similar caveat that the government

5    recognizes that the applicable guideline sentencing

6    range in this case, after the 782 amendment, based on

7    the total offense level of 33 and Criminal History of 1,

8    which results in a guideline sentencing range of 135 to

9    168 months.  Therefore the government is withdrawing the

10   sentencing recommendation previously submitted.  Based

11   on that as to the history and characteristics of this

12   defendant, the United States recognizes this defendant

13   accepted responsibility for his role as a leader, and

14   the conspiracy directly controlling, supervising drug

15   trafficking activities.

16         In addition this defendant, in addition to

17   accepting responsibility, this defendant demonstrated

18   humility.  Prior to being involved in these activities

19   we recognize that he was a supportive husband and all

20   indications is that he participated with the family and

21   helped to raise his child as well as his wife's

22   children.  He has work history.

23         In addition to that, the United States finds it

24   significant that he has no Criminal History, and submits

25   that a sentence of 135 months would be sufficient but

1   not greater than necessary in this particular case.

2   Thank you, Your Honor.

3        THE COURT: Do you have any evidence of violent

4   actions?

5        AUSA MATHEWS:  The government does not have

6   evidence of violent actions.  Counsel noted that there

7   were some witnesses that would have testified as to

8   certain actions but based on our agreements and

9   discussions the United States does not believe there is

10  any actions of violence or cause of bodily harm in this

11  case.

12       THE COURT: Very well.  On September 18, 2014 the

13  defendant, pled guilty to Count 1 of the indictment in

14  this Criminal case 13-888, charging a violation of Title

15  21 sections 841(a)(1) 846 and 860, conspiracy to possess

16  with intent to distribute at least 5 kilograms but less

17  then 15 kilograms of cocaine within 1,000 feet of a

18  protected location, that is the Francisco Figueroa

19  Public  Housing project located in Anasco, a class A

20  felony.

21       The November 1, 2014 edition of the Sentencing

22  Guidelines manual has been used to calculate the

23  guideline adjustments pursuant to the provisions of

24  guideline section 1B1.11(a).  According to section

25  2D1.2(a)(1), the base offense level is 2 plus the

offense level from section 2D1.1 based on the stipulated
drug amount of at least 5 kilograms but less then 15
kilograms of cocaine as per the provisions of the
guideline section, the offense level is 30.  As such the
total base offense level is 32.

Because Mr. Carrero was the leader in the drug
trafficking organization, actually charged as defendant
number 4, a four level increase is applied as per
guidelihne section 2B1.1(a).

Since the defendant accepted responsibilities for
his involvement in this offense the base offense level
is reduced by 3 levels pursuant to guideline section
3E1.1(a) & (b).  There are no other applicable guideline
adjustments.

Based on a total offense level of 33 and a
Criminal History Category of 1 the guideline
imprisonment range for this offense is from 135 to 168
months, and there is a fine range of $17,500.00 to 20
million dollars plus a supervised release term of ten
years.

The Court has reviewed the guideline calculations
and finds that the Presentence Report has adequately
applied the guideline computations which in turn reflect
the components of this offense by considering its nature
and circumstances.

1      The Court has also considered the 3553 factors,

2   among these that the defendant is 29 years of age, has

3   an 11th grade education.  Prior to the arrest in this

4   case he was employed as a barber for 11 years, he is the

5   father of an 11 year old child.  No major physical or

6   mental health problems.  He is a first time offender and

7   has a verified prior drug use of cocaine.  Reason for

8   which he will need treatment.

9      In this particular case Mr. Carrero is described

10  and as stipulated within the plea agreement, described

11  as a leader, directly controlling and supervising the

12  drug trafficking activities at the drug point located at

13  the public housing project.  In particular the Manuco

14  Ward in Anasco.  During the span of the conspiracy he

15  purchased multi-kilo quantities of narcotics and oversaw

16  the transportation by the subordinates, those being the

17  runners and sellers and any other supervisors in the

18  area within the public housing project.

19      Originally in the presentence report the parties

20  had agreed to recommend to the Court a sentence of 151

21  months.  However after the amendments of the guidelines

22  now the resulting guideline range is lower and the

23  government today has modified its recommendation to that

24  of 135 months.

25      In imposing a sentence not harsher than

1  necessary, the Court finds that the sentence at the

2  lower end of the guideline range will be sufficient,

3  taking into consideration different then in the case of

4  other defendants, that in this particular case this

5  defendant has no prior record.  There is no evidence

6  that he participated in violent actions and is not

7  related to the weapon possession and he didn't get that

8  adjustment either.

9      Accordingly it is the judgment of this Court that

10  Mr. Carlos Carrero is committed to the custody of the

11  Bureau of Prisons to be imprisoned for a term of 135

12  months.

13      The Bureau of Prisons is recommended to afford

14  this defendant drug rehabilitation treatment and

15  vocational training.

16      Upon release from confinement the defendant shall

17  be placed on supervised release for a temple of ten

18  years to be served under the following terms and

19  conditions:

20      The defendant shall not commit another Federal,

21  State or local crime and observe the standard conditions

22  of supervised release recommended by the sentencing

23  commission and adopted by the Court.

24      The defendant shall not unlawfully possess a

25  controlled substance and refrain from possessing

firearms, destructive devices and other dangerous weapons.

The defendant shall refrain from the unlawful use of controlled substances and submit to a drug test within fifteen days of release, thereafter submit to random drug testing no less then three samples during the supervision period and not to exceed 104 samples per year in accordance with the drug after care program policy of the probation office approved by the Court. If any such samples detect substance abuse the defendant shall participate in an in-patient or out-patient substance abuse treatment program for evaluation and or treatment as arranged by the Probation Officer until duly discharged.  The defendant is required to contribute to the cost of services rendered in an amount arranged by the Probation Officer based on the ability to pay or availability of third party payments.

The defendant shall participate in a vocational training and or job placement program recommended by the Probation Officer.

The defendant shall submit to a search of his person, property, house, residence, vehicles, papers, computers, other electronic communication or data storage device or media and effects to a search at any time with or without a warrant by the Probation Officer

1   and if necessary with the assistance of any other law

2   enforcement officer, if there is reasonable suspicion

3   concerning unlawful conduct or a violation of a

4   condition of probation or supervised release.

5        The Probation Officer shall seize any electronic

6   device which will be subject to further forensic

7   investigation or analysis.  Failure to submit to search

8   may be grounds for revocation of supervised release.

9   The defendant shall warn any other residents or

10  occupants that the residence may be subject to search

11  pursuant to this condition.

12       The defendant shall perform 200 hours of unpaid

13  community service work during the supervision period at

14  a private, nonprofit or public facility to be selected

15  and under such arrangement as the Probation Officer of

16  the Court may determine.

17       The defendant shall provide the Probation Officer

18  access to any financial information upon request.

19       The defendant shall assist in the collection of a

20  DNA sample as directed by the Probation Officer pursuant

21  to the revised DNA collection requirements and Title 18

22  section 3563(a)(9).

23       Having considered the defendants financial

24  condition a fine is not imposed.  A special monetary

25  assessment fee in the amount $100.00 is imposed as

1    required by law.

2        The defendant has been sentenced under the terms

3    and conditions more favorable then the ones applicable

4    in the guidelines and it should be noted that even

5    though separate guidelines or different guidelines apply

6    at this stage, still the stipulation for 151 months that

7    was originally agreed in the presentence was a sentence

8    perfectly capable of being imposed and was within the

9    guideline range, still the government chose to recommend

10   a more favorable sentence.

11       So, Mr. Carrero, I adopted that recommendation, I

12   hope that you realize that you have received an

13   opportunity here basically counting on the fact that

14   because you have a supportive family, that you will be

15   able to restructure your wrong doing and path.  However

16   we are talking about several years of illegal conduct,

17   years in which you were distributing drugs left and

18   right without qualms.  Let me ask you, who are the

19   minors sitting in the last row along with your

20   relatives?

21       THE DEFENDANT:  My niece, my son is there, the

22   two bigger girls that I raised, my wife is there, my

23   mother and father and my brother-in-law.

24       THE COURT: As you said your mother and father

25   didn't teach you to do this.  They are law abiding

1  persons who have worked hard, everything they have they

2  have gained by work hard, correct?

3          THE DEFENDANT:  Yes.

4          THE COURT: And you have your wife that basically

5  was counting on you for support to the family and having

6  you next to her to raise your children, and look what

7  you have done.  The reason I ask you to tell me who the

8  minors are, is because you know what?  You are going

9  away for ten years, what if someone, maybe a neighbor of

10  yours, maybe the person that is going to substitute you

11  at the drug point, turns around and next week is selling

12  drugs to your son, or selling drugs to your niece, is

13  that okay?

14          THE DEFENDANT:  No.

15          THE COURT: If it is not good for you, it is not

16  good for anyone else, and that is what you were doing.

17  You should be ashamed because you had no reason. You are

18  a healthy person, a healthy man, you are strong, you

19  could work, you could work hard day and night.  But you

20  chose the easy path, great, selling drugs.  And then it

21  is bad if someone else sells drugs to your son or your

22  daughter.  But you have heard that phrase that what goes

23  around comes around, and one of these days someone may

24  be offering drugs to your children.  So can you come

25  then complain?

1          THE DEFENDANT:   No.

2          THE COURT: Did you ever think that you were

3    selling drugs to the sons of other individuals, probably

4    the parents of other kids that were seeing that, the

5    father or mother getting back home under the effects of

6    narcotics.   Then you come here and beg and then you come

7    here and cry.   You know what?   I should not consider any

8    of that.   I am telling you this after the sentence

9    because all of that was considered.   Not just because

10   the law tells me that I have to.   I did.   But do you

11   think that you have a right to come here and say that?

12          THE DEFENDANT:   No.

13          THE COURT: Tell me, what reason in the world you

14   had to do this?   And your attorney talked here for

15   minutes and minutes, about how you didn't take much

16   profit to take home.   You know what?   Selling drugs is a

17   harm to society and it so happens that people that sell

18   drugs usually live in the same condition, because you

19   waste it the same way that you gain it.   That is not a

20   mitigating factor, that is on top of the illegal

21   actions, mismanagement, and still that is what you come

22   here and claim.

23          Then you ask me to consider the fact that you

24   have young children.   If you don't consider it, I should

25   not have to consider it.   Keep that in mind, if there is

1   a next time that you come back I don't want to hear you

2   crying.   I don't want to hear you begging because you

3   are the only person responsible  for that.  Do you

4   understand that?

5          THE DEFENDANT:  Yes, I understand.

6          THE COURT: In case that you find a fundamental

7   defect in the sentence imposed, although I think that

8   you waived your right to appeal, you do have fourteen

9   days from the entry of judgment to file your notice of

10  appeal.

11         MS. CASTRO:  Your Honor, could I request some

12  additional things?  First of all I know that you can't

13  order but could you recommend that my client either go

14  either to Pensacola or Coleman or any prison in the

15  Florida State so that the family can visit?

16         THE COURT: Recommendation so issued.

17         MS. CASTRO:  And as well that if he will be able

18  to qualify for the drug program, also take his GED and

19  any other vocational courses.

20         THE COURT: Vocational courses I recommended,

21  opportunity to complete his GED is to be included.  And

22  the drug rehabilitation program as well.

23         MS. CASTRO:  Thank you.

24         AUSA MATHEWS:  Your Honor, the United States

25  moves for the dismissal of the remaining counts.



1          THE COURT: So ordered. You are excused.

1       REPORTER'S CERTIFICATE

2       I, DIANE BREAZ, RPR and Official Court Reporter

3 for the U.S. District Court for the District of Puerto

4 Rico.

5       DO HEREBY CERTIFY that the foregoing transcript

6 is a full, true and correct record of the proceedings

7 taken down by me and later transcribed.

8       I FURTHER CERTIFY that I am in no way interested

9 in the outcome of the case.

10

11       S/ DIANE BREAZ

12

13

14

15

16

17

18

19

20

21

22

23

24

25